In re TRANSPORTATION OF SCHOOL CHILDREN.
APPEAL OF THOMPSON.

No. 8579
Submitted May 15, 1945. Decided September 13, 1945.
161 Pac. (2d) 901

Messrs. Loble & Angstman, of Helena, for Mr. John G. Thompson.

Mr. J. Miller Smith, of Helena, for School District.

Mr. J. J. Thomas, of Helena, for Mr. Earl K. Hilger.

Mr. Forrest H. Anderson, Co. Atty., and Mr. Robert C. Brooke, Asst. Co. Atty., both of Helena, for the County.

HONORABLE LYMAN H. BENNETT, District Judge (sitting in place of Mr. Justice Angstman, disqualified), delivered the opinion of the court.

This cause is before us upon appeal by one John G. Thompson, Jr., from a judgment entered by the District Court of the First Judicial District of the State of Montana in and for the county of Lewis and Clark pursuant to the submission of a controversy under the provisions of Chapter 96, Code of Civil Procedure, being sections 9872 to 9874, inclusive, Revised Codes of Montana 1935. The statement of facts entered into between Mr. Thompson, a common carrier, the trustees of School Districts numbered One and Two, Lewis and Clark County, and Earl K. Hilger, a private carrier, the holder of a pupil transportation contract with said trustees, states the controversy thus: "The controversy between the parties is this: In awarding a contract for the transportation of pupils is it necessary under the law to advertise and call for bids even though the contract be awarded to a private, as distinguished from a common, carrier?" The lower court having held that it was not necessary to so call for bids, Mr. Thompson appealed and in his brief on appeal stated that the sole question involved is whether such a contract

may be made with a private carrier without advertising and calling for bids, and contend that it can not.

The first legislation on the subject of transportation of school pupils by the trustees of school districts was adopted in 1903, Chapter LXVIII, 1903. Until 1911 this law was comfined to the transportation of pupils to other districts when it was deemed best to close a school. In 1911, c. 40, the legislation was broadened to include as permissible the transportation of pupils resident within a district from home to school. It was in 1925, Chapter 76, Laws of 1925, that the legislation prohibited the letting of a contract for the transportation of more than five pupils on a single transportation route without advertising for bids. Except for a slight change relating to the time and method of advertising, the law on the subject of requiring advertising for bids before letting of contracts for transportation of pupils remained as provided in 1925 until 1941, when by Chapter 152, Laws of 1941, the whole subject of transportation of pupils received comprehensive treatment. In this last legislation the subject is covered, in so far as it is relevant here, by this provision: ''Before contracts are awarded to a common carrier, the board shall secure bids, by publishing a call for bids * * *.'' Sec. 5. The 1935 Codes having carried the last then antecedent legislation into the Codes as section 1010, that Code section was expressly repealed by section 15 of Chapter 152, Laws of 1941, which chapter also carried a provision repealing ''all acts and parts of acts in conflict'' therewith.

We here note the provisions of section 1016, Revised Codes of Montana, 1935, as follows: ''It shall be unlawful for any school trustee to have any pecuniary interest, either directly or indirectly, in the erection of any schoolhouses, or for the warming, ventilating, furnishing, or repairing the same, or be in any manner connected with the furnishing of supplies for the maintenance of the schools or to receive or accept any compensation or reward for services rendered as trustees, except as hereinbefore provided. No board of trustees shall let any contract for building, furnishing, repairing, or other work, for the benefit

of the district, where the amount involved is two hundred and fifty dollars, or more, without first advertising in a newspaper published in the county for at least two weeks, calling for bids to perform such work, and the board shall award the contract to the lowest responsible bidder; provided, however, that the board of school trustees shall have the right to reject any and all bids."

Appellant contends that notwithstanding what may be said of other legislative enactments or the absence of them, this last quoted section requires the call for bids for transportation of pupils whenever the amount involved is at or over the amount above stated. In passing we might say that the parties seem to be in agreement, at least by silence thereon, that the amount involved would be sufficient to bring the statute quoted into operation, if it is otherwise applicable.

A careful study of section 1016, supra, leads us to the conclusion that it does not require the trustees of a school district to call for bids for the transportation of pupils. It is clear that the words "building, furnishing, repairing" do not include transportation of pupils, and the phrase "or other work" which appellant seeks to have construed so to do, under the ejusdem generis canon of statutory construction, "where general words follow particular and specific words, the former are limited in meaning to things of the same kind as those particularly enumerated", Thaanum v. Bynum Irrigation District, 72 Mont. 221, 232 Pac. 528, 530, cannot be found to include such contracts. The specific words used do not include or imply inclusion of operational contracts. The construction of the words "or other work" sought by appellant would require the trustees to call for bids for superintendents, principals, teachers, janitors or any other operators or administrators. Such could not have been the intention of the legislature. It might be noted that the first portion of section 1016 which forbids trustees from having pecuniary interest in contracts includes "furnishing of supplies." Without intimating that such a phrase would

necessarily include transportation, it is apparent that the provisions relating to call for bids are much more limited.

· Such being our conclusion as to section 1016, we must then examine the condition of the specific legislative enactments concerning transportation of pupils.

Appellant contends that notwithstanding the express repeal ██ ██ of section 1010, Revised Codes of 1935, which did require the trustees to call for bids for transportation of more than five pupils on a single transportation route, the language used by the legislature by enactment of Chapter 152, Laws of 1941: "Before contracts are awarded to a common carrier, the board shall secure bids, by publishing a call for bids," must be construed to include all carriers as contradistinguished from parents or guardians. We cannot arrive at such a conclusion. By section 10519, Revised Codes of 1935, the function of the court in the construction of a statute is stated to be "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." Maki v. Anaconda Copper Mining Co., 87 Mont. 314, 287 Pac. 170. Section 15, Revised Codes of 1935, lays down this rule: "Words and phrases used in the codes or other statutes of Montana are construed according to context and the approved usage of the language; but technical words and phrases, and such others as have acquired a peculiar and appropriate meaning * * * are to be construed according to such peculiar and appropriate meaning or definition."

Bearing in mind that elsewhere in the same section (section ██ 5) of Chapter 152, Laws of 1941, wherein is to be found the provision "Before contracts are awarded to a common carrier, the board shall secure bids, by publishing a call for bids," there is contained the stipulation, "All contracts for transportation, or anything in lieu of transportation, must be drawn in triplicate, signed by both the district clerk and the chairman of the school board, and by the parents or legally appointed guardian of the children receiving transportation; except that when transportation is furnished by a carrier, the

contract shall be signed by the district clerk, the chairman of the school board and by the carrier," we deem ourselves required to assign some meaning to the words "common carrier" other than would be assigned to the word "carrier." These two words can be found to have been given a peculiar and appropriate meaning by this court, as being a carrier who holds himself out to take goods, chattels or persons for hire for all persons indiscriminately, as distinguished from a carrier who agrees by special agreement or contract to transport persons or property from one place to another. Stoner v. Underseth et al., 85 Mont. 11, 277 Pac. 437. It is clear that the word "carrier" was not intended to apply to parents or guardians, and we are bound to find significance in the addition of the word "common" to that word where the subject of calls for bids was mentioned.

Appellant attempts to have ascribed to the language requiring the call for bids the effect of a saving clause and to secure a holding that the usual function of a saving clause is not to create a power but to preserve an existing one, citing 59 C. J. 1093, n. 86, as precedent therefor. We do not find either that there is anything in the nature of a saving clause in the language or that there is any grant of power involved from the language used or not used. Whatever grant of power that may be required may be found in section 1 of the chapter, Chapter 152, Laws of 1941. The provision for calls for bids is a limitation of that power applying only to contracts with common carriers. In the case of Missoula County Free High School v. Smith, 91 Mont. 419, 8 Pac. (2d) 800, this court concluded that, since there was no statute preventing the trustees of a county high school from letting a contract without competitive bidding, they were not obliged to advertise for bids. We see no controlling distinction between that case and this with which we are dealing.

In accordance with the well established principle of statutory construction expressio unius est exclusio alterius, we conclude that there is no statute requiring the calling for bids for the transportation of school pupils except where a contract with a common carrier as defined above is contemplated. Under

the terms of the stipulation heretofore set out framing the controversy herein, the question whether under our constitutional and legislative provisions such contract with a common carrier may lawfully be made, is not now before us and we express no opinion thereon.

Appellant contends further that the interpretation we have reached would render the Act unconstitutional as discriminatory. But it is unnecessary for us to consider whether a legislative distinction between common carriers and other carriers is such an unreasonable discrimination as to have that effect; for section 5 requires such bids only before contracts with common carriers, and if such provision is void the Act requires no call for bids before any contract; and in spite of such contended invalidity of section 5 as so construed, section 15 of the Act expressly repealed section 1010, Revised Codes of 1935, which as above stated was the only prior Act then requiring such call for bids. Thus, if appellant's argument of unconstitutionality is correct, bids are in no event necessary and his case falls; consequently a determination of that question is not presented by the issues.

The judgment appealed from is affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris and Cheadle concur.

Mr. Justice Adair (dissenting).

The trustees of school districts numbered one and two in Lewis and Clark County let a contract for the transportation of the school children residing in such districts without first advertising or calling for bids. The amount involved exceeds two hundred fifty dollars. This in my opinion violates the prohibition contained in section 1016, Revised Codes of Montana of 1935, which provides: ''No board of trustees shall let any contract for building, furnishing, repairing, *or other work, for the benefit* of the district, where the amount involved is two hundred and fifty dollars, or more, without first advertising in a newspaper published in the county for at least two weeks, calling for bids to perform such work, and the board shall award the con-

tract to the lowest responsible bidder; * * *." (Emphasis mine.) This statute is constitutional. Its purpose is to safeguard the interests of the school districts and the taxpayers thereof, to prevent favoritism and graft and to curb extravagance and corruption. Such express prohibition of the legislature should not be disregarded by the courts.

Of course the contract here involved is not a "contract for building, furnishing, repairing" but it most certainly is a contract for "other work, for the benefit of the district" for it is a contract for the work of transporting the school children of the two school districts for the benefit of such districts and, hence, comes within the specific prohibition of section 1016, Revised Codes, requiring that the boards of trustees advertise for bids before letting the contract.

The statute contains the phrase, "No board of trustees shall let any contract for building, furnishing, repairing, *or* other work, for the benefit of the district." The use of the word "or" in such phrase clearly indicates an intention to differentiate between contracts for the work of (1) building, (2) or furnishing, (3) or repairing, (4) "*or* other work, for the benefit of the district." In State ex rel. Normile v. Cooney, 100 Mont. 391, at pages 398, 399, 47 Pac. (2d) 637, at page 641, this court held that the use of the disjunctive conjunction "or" in a statute expresses an alternative, and renders that appearing in the clause following inapplicable to the subject-matter of the clause preceding the conjunction.

The so-called "ejusdem generis canon" may not be brought into action and trained on the statute for the purpose of blasting and effacing therefrom the phrase "or other work for the benefit of the district." As was correctly said by this court in Burk v. Montana Power Co., 79 Mont. 52, 64, 255 Pac. 337, 338: "The rule ejusdem generis is only a rule intended to aid the court in arriving at the intention of the Legislature and cannot be invoked where its application would result in a disregard of plain and unambiguous language used in the statute. In this instance to apply the rule would be to refuse to give to

the words 'not herein enumerated' any effect. They would be surplusage, and the general clause would have the same meaning if it read, 'or in any occupation known to be dangerous.' Our conclusion is that by the general clause a separate class of occupations is designated, independent of and in addition to those specifically named, in which the employment under the age of 16 years is an offense, unless it is void, as insisted by defendant, because uncertain.''

The Latin maxim ''Expressio unios est exclusio alterius'' is quoted in construing the language of section 1016, Revised Codes, but it must be remembered that such maxim is not of universal application as applied to statutory construction and that it should be applied as an aid in arriving at intention rather than to defeat the apparent intention.

The legislature, by statutory enactment, has defined ''common carrier.'' By such definition the court is bound. Section 7846, Revised Codes of Montana of 1935, provides: ''Everyone who offers to the public to carry persons, property, or messages, excepting only telegraphic or telephonic messages, is a common carrier of whatever he thus offers to carry.'' Under such definition the person engaged in carrying all the school children of the two school districts is a common carrier of such persons and under the express provisions of section 1016, Revised Codes, the trustees were required to advertise and call for bids before letting the contract for the work of transporting the children residing in such districts.

Rehearing denied October 9, 1945.