No. 13489

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

_____

W.R. GRACE & CO., a Conn-
ecticut Corporation,

                    Plaintiff and Respondent,

     -vs-

THE DEPARTMENT OF REVENUE OF THE
STATE OF MONTANA,

                    Defendant and Appellant.

_____

Appeal from:   District Court of the First Judicial District,
               Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

     For Appellant:

          William D. Dexter argued, Olympia, Washington

     For Respondent:

          Hughes, Bennett and Cain, Helena, Montana
          George T. Bennett argued, Helena, Montana

_____

                         Submitted:   March 23, 1977

                         Decided: JUL 7 1977

Filed: JUL 2 1977


_____
                          Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Respondent W. R. Grace and Co. (Grace) brought this action in the district court, Lewis and Clark County, for a declaratory judgment challenging the Department of Revenue's (DOR) asserted right to compel Grace to answer certain interrogatories. The interrogatories were propounded to Grace subsequent to a deficiency assessment of corporation license taxes by DOR, but prior to protest hearing concerning the amount of the assessment. The district court granted Grace's motion for summary judgment in the declaratory judgment action and DOR appeals to this Court.

Grace is a Connecticut corporation which was at all times relevant, qualified to do, and doing business in Montana. For the calendar years 1967 through and including 1971, which are the taxable years in question, Grace filed Montana corporation license tax returns with DOR's predecessor, the State Board of Equalization. Thereafter, the auditors of the Multistate Tax Commission, of which Montana is a member, conducted a field audit of Grace's records. There is no contention that the auditors were denied access to any relevant documents or personnel during the course of the audit. On the basis of this field audit, DOR assessed additional corporation license taxes. The amount of the deficiency assessment is the underlying cause of the instant controversy.

DOR formally notified Grace by letter dated October 16, 1973, that it had made deficiency assessments for the taxable years in question in the total amount of $123,706.38, including interest. Pursuant to section 84-1508.1, R.C.M. 1947, Grace timely filed a protest of DOR's deficiency assessments. This notice of protest, dated November 7, 1973, requested an oral hearing and opportunity to present evidence in support of its

- 2 -

protest. On April 24, 1974 and again on October 23 and 24, 1974, counsel for Grace met with counsel for and representatives of DOR to discuss a possible solution to the dispute over the amount of the deficiency assessments. At the latter meeting a protest hearing was scheduled to begin on December 4, 1974.

On November 1, 1974, DOR sent to Grace a set of interrogatories consisting of thirty-nine questions. On November 20, Grace answered twenty-nine of these interrogatories and objected to the remaining ten questions on grounds of irrelevancy or because compilation of the requested information by Grace would be unreasonably burdensome. In addition, on or about November 1, DOR requested that Grace submit to a re-audit of its books and records at its corporate offices in New York City. Grace acquiesced to the re-audit and DOR continued the hearing originally scheduled for December 4, to April 9, 1975. Thereafter, on or about February 10, DOR cancelled the April 9 hearing and informed Grace that it had retained additional counsel. On February 18 DOR served a second set of interrogatories upon Grace. Grace, deeming the second set of interrogatories to be untimely, irrelevant, and unreasonable, filed this action for a declaratory judgment on April 30, 1975. On March 2, 1976, Grace filed a motion for summary judgment. Following extensive briefing and oral argument, the district court granted Grace's motion.

Two issues are presented for review in this appeal:

1. Whether DOR may discover additional information from a taxpayer after entering deficiency assessment, but prior to the protest hearing provided for by section 84-1508.1, R.C.M. 1947.

2. Whether the interrogatories submitted by DOR to Grace are material and relevant in the instant case.

The portion of section 84-1508.1 which is controlling

in the instant case states:

> "(a) Deficiency assessments. If, the state department of revenue determines that the amount of tax due is greater than the amount disclosed by the return, it shall mail to the taxpayer a notice of the additional tax proposed to be assessed. Within thirty (30) days after the mailing of the notice, the taxpayer may file with the state department of revenue a written protest against the proposed additional tax, setting forth the grounds upon which the protest is based, and may request in its protest an oral hearing or an opportunity to present additional evidence relating to its tax liability. If no protest is filed, the amount of the additional tax proposed to be assessed becomes final upon the expiration of the thirty (30) day period. If such protest is filed, the state department of revenue shall reconsider the proposed assessment, and if the taxpayer has so requested, shall grant the taxpayer an oral hearing. After consideration of the protest and the evidence presented in the event of an oral hearing, the state department of revenue's action upon the protest is final when it mails notice of its action to the taxpayer."

The crux of this case is the interpretation of that portion of section 84-1508.1 which provides for a protest hearing before DOR. DOR argues that the statute contemplates a full blown evidentiary hearing at which both parties are allowed to present evidence supporting their respective positions. Grace on the other hand urges that the statute contemplates not an evidentiary hearing, but merely an opportunity for the taxpayer to request a review of the administrative procedures used to calculate the assessment and to present evidence in support of his tax calculations. We agree with the latter interpretation.

We recently examined the law dealing with statutory interpretation in Department of Revenue v. American Smelting and Refining Co., ____Mont.____, ____P.2d____, 34 St.Rep. 597, where we stated:

> "The function of the Supreme Court when construing a statute is simply to ascertain and declare what is in substance stated therein, and not to insert what has been omitted or to omit what has been inserted. Dunphy v. Anaconda Co., 151 Mont. 76, 438 P.2d 660; In re Transportation of School

Children, 117 Mont. 618, 161 P.2d 901; Section
93-401-15, R.C.M. 1947. The fundamental rule of
statutory construction is that the intent of the
legislature controls. Matter of Senate Bill No.
23, Chapter 491, Montana Session Laws of 1973,
168 Mont. 102, 540 P.2d 975, 32 St.Rep. 954; Hammill
v. Young, 168 Mont. 81, 540 P.2d 971, 32 St.Rep.
935; Dunphy v. Anaconda Co., supra; Section 93-401-
16, R.C.M. 1947. Where the intent of the legis-
lature can be determined from the plain meaning of
the words used, the courts may not go further and
apply any other means of interpretation. State ex
rel. Huffman v. District Court, 154 Mont. 201,
461 P.2d 847; Dunphy v. Anaconda Co., supra."

Here, the plain meaning of the words used by the legis-
lature unmistakably discloses its intent. Section 84-1508.1
does not contemplate "a true adversary hearing" and accordingly,
there is no need for DOR to develop a "full and complete record"
at such hearing. Section 84-1508.1 provides the taxpayer with
a speedy remedy to be used to challenge possible administrative
error in the calculation of the proposed deficiency assessment.
By its terms this section grants DOR only the power to "reconsider
the proposed assessment." This necessarily means that it is
incumbent upon DOR to be prepared for a protest hearing on its
proposed deficiency assessment at the time such notice of assess-
ment is mailed to the taxpayer. To permit DOR to routinely com-
pel the taxpayer to submit to after-the-fact interrogatories
would be directly in opposition to the initial presumption that
the assessment was validly made after a complete investigation
of all the relevant facts by DOR. In sum, the protest hearing
is nothing more than a final opportunity for the taxpayer to
convince DOR that its deficiency assessment is in whole or in
part erroneous.

We find no merit in DOR's argument that the hearing
contemplated by section 84-1508.1 is a "contested case" governed
by the Montana Administrative Procedure Act (Title 82, Chapter
42, R.C.M. 1947). As stated above, section 84-1508.1 does not
provide for a true adversary hearing, but only for a presentation

- 5 -

of additional evidence by the taxpayer and a reconsideration by DOR thereafter. This is not the type of hearing contemplated by the MAPA. Secondly, the procedure outlined within section 84-1508.1 governs the protest hearing. This procedure is contrary to MAPA procedure thereby indicating a legislative intent to prescribe procedure by statute to the exclusion of MAPA.

DOR will not suffer prejudice by this Court's refusal to require Grace to submit to further discovery prior to the protest hearing. At an oral hearing below, both parties agreed that DOR cannot enlarge the amount of the deficiency assessment following the protest hearing. Furthermore, any appeal to the State Tax Appeal Board from DOR's final determination of tax deficiency is a trial de novo. Therefore, DOR will have full discovery power at the time of appeal from the protest hearing.

The resolution of the first issue renders discussion of the second issue unnecessary. The judgment of the district court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 6 -